Filed 6/26/26  P. v. Caneitzep CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>WILLIAM ANIBAL CANEITZEP,<br><br>        Defendant and Appellant. | A174536<br><br>(San Mateo County<br>Super. Ct. No. 24-NF-007632-A) |

Defendant William Anibal Caneitzep appeals from a judgment entered after sentence was imposed upon his violation of probation.  His appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), asking this court to conduct an independent review to determine whether there are any arguable issues.  Defendant filed a supplemental brief.  Having reviewed defendant's arguments and finding no arguable issues, we affirm.

**BACKGROUND**

San Mateo County Sherriff's deputies responded to a report of a trailer on fire.  Upon arrival at the scene, deputies observed a trailer, which was attached to a jeep, "engulfed in flames."  The victim, who lived in the trailer, was not inside at the time.  After retrieving video footage of the area, deputies were able to identify defendant.  Deputies located defendant, who was driving a vehicle, and they conducted a traffic enforcement stop.  After

1

reading defendant his *Miranda* rights,[1] defendant confessed to starting the fire in "retaliation for a money dispute."

The San Mateo County District Attorney filed an information alleging one count of arson of an inhabited structure (Pen. Code, § 451, subd. (b)—count 1), misdemeanor driving when privilege suspended for a driving under the influence conviction (Veh. Code, § 14601.2, subd. (a)—count 2); and misdemeanor driving when privilege suspended for failing a blood-alcohol test (*id.*, § 14601.5, subd. (a)—count 3). The information further alleged count 1 was a serious felony (Pen. Code, § 1192.7, subd. (c)) and was aggravated (*id.*, § 451.1, subds. (a)–(c)) and as to counts 2 and 3 that defendant had suffered a prior conviction of Vehicle Code sections 14601.2, subdivision (a) and 14601.5, subdivision (d)(2).

Defendant pleaded no contest to count 1 (arson) and admitted it was a serious felony. The remaining counts were dismissed and allegations stricken. The court suspended imposition of sentence and placed defendant on two years' probation subject to several terms and conditions, including that defendant "participate in substance abuse related alcohol assessment as directed by probation," abstain from alcohol and controlled substances, and submit to chemical testing. The court minutes, in turn, stated, as part of his probation, defendant "shall abstain from the use or possession" of alcohol and controlled substances; "submit to chemical testing for detection of any alcohol or controlled substances"; and "[p]articipate in treatment or counseling as directed . . . by the Probation officer," among other conditions. A Spanish-language interpreter interpreted the plea form and assisted at the change of plea and sentencing hearings.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

The following year, the probation department filed an affidavit of probation violation, alleging 22 violations for failing to abstain from drugs and alcohol and failing to complete an outpatient treatment program as he had been directed.

In preparation for the violation hearing, the probation department filed a probation violation memorandum recommending revocation of probation. The probation officer explained defendant's probation conditions included that he abstain from alcohol and drug use, submit to chemical testing, and that he "participate in treatment or counseling as directed." In December 2024, the probation officer directed defendant to enroll and complete an outpatient treatment program.

Defendant enrolled in a treatment program but was discharged in early February 2025 for lack of attendance, participation, and failing to submit urine analysis samples. When asked why he was not attending the outpatient program, defendant stated it was not covered by insurance. Defendant reenrolled in late February, and in March, the probation officer confirmed defendant was enrolled and the program was covered by insurance. In May, after a positive test for several substances, and defendant's own admission that he had been drinking and "smoking 'meth,' " the probation officer directed defendant to continue with outpatient treatment. In June, defendant was "counseled about his inconsistency . . . with outpatient treatment" and referred to complete an assessment "to evaluate the appropriate level of care." That assessment determined outpatient treatment was the appropriate level of care and that defendant "was not interested in residential treatment." The probation officer directed defendant to follow the recommendation provided by the assessment and reenroll in outpatient treatment by July 1. When the officer met with defendant on July 17, he

reminded defendant that he was supposed to be enrolled by July 1, that the treatment center informed the officer defendant had rescheduled his enrollment appointment, and that defendant had failed to show up at the rescheduled appointment.  Defendant maintained he was on the waitlist, and the officer confirmed he was reenrolled in treatment the following day.  However, at the end of July, defendant's probation officer was contacted by the treatment program and informed defendant had missed his individual meeting.  Defendant was arrested at the beginning of August.

The probation department noted although defendant had "enrolled in outpatient treatment multiple times, he has failed to complete the treatment and [continues to] test positive for controlled substances."  Further, despite "numerous opportunities to address his substance abuse issues," defendant had "demonstrated he has not taking [*sic*] probation seriously" and he had "increased levels of controlled substances."  For those reasons, the department recommended termination of probation.

At the probation violation arraignment, the court noted an interpreter was no longer required.[2]  At the violation hearing, the court began by informing defendant of the sentence—three years in state prison with 197 days' credit—if he admitted the violation.  The court asked defendant, "Is that what you would like to do?"  Defendant replied, "Yes."  The court then noted, "If you want to admit the violation, you will not have a hearing."  The court informed defendant of the rights he would be giving up and asked, "Do you understand that, by admitting this violation, you are waiving those rights?"  Defendant replied, "Yes, your Honor."  The court followed up by asking, "And you do so freely and voluntarily without being threatened or given any additional promises?"  Defendant again replied, "Yes, Your Honor."

_____

[2] The transcript from this hearing is not in the record before us.

4

The court then took defendant's admission that he "violated [his] probation by not doing the out-patient program." Defense counsel concurred in the admission, joined in the waivers, and stipulated to the factual basis for the violation. The court found defendant had "made a knowing, intelligent, and voluntary waiver of his statutory and constitutional rights" and accepted admission of the violation of probation.

The court sentenced defendant to the low term of three years for the arson conviction.

**DISCUSSION**

"No appeal shall be taken by the defendant from . . . a revocation of probation following an admission of violation," except where the trial court has signed a signed certificate of probable cause. (Pen. Code, § 1237.5; Cal. Rules of Court, rule 8.304(b)(2) [certificate of probable cause is required after admission of probation violation].)

Here, defendant requested a certificate of probable cause claiming ineffective assistance of counsel, which the trial court denied. In his supplemental letter brief, defendant again claims he received ineffective assistance of counsel. He maintains his attorney provided "Bad legal representation," "threaten[ed] me with extra jail time if I don't do what he says," and "promis[ed] me extra credits, 8 months of incarceration if I do what he says."

We have no authority to waive any of the requirements for issuance of a certificate of probable cause. (*People v. Thurman* (2007) 157 Cal.App.4th 36, 42.) Having failed to obtain a certificate, defendant may not circumvent the requirement through a claim of ineffective assistance of counsel. (See *In re Chavez* (2003) 30 Cal.4th 643, 651 ["A defendant who challenges the validity of such a plea on the ground that trial counsel rendered ineffective assistance

5

[of counsel] in advance regarding the plea may not circumvent the requirements of [Penal Code] section 1237.5."]; *People v. Stubbs* (1998) 61 Cal.App.4th 243, 244–245 [defendant required to obtain a certificate of probable cause in order to raise claim he received ineffective assistance of counsel prior to his plea].)

Defendant's remedy for the trial court's denial of the certificate of probable cause was to file a petition for writ relief. "[W]here, as here, a certificate of probable cause has been denied, the appeal is not operative and the denial of the certificate must be reviewed by writ of mandate. . . . [¶] . . . 'When an appellate court considers an appeal on its merits in spite of the appellant's noncompliance with [Penal Code] section 1237.5 and [California Rules of Court,] rule [8.304(b)(2)], it arrogates to itself the screening which should have taken place at the county level.' " (*People v. Castelan* (1995) 32 Cal.App.4th 1185, 1188, italics omitted.)

Additionally, defendant contends he lacked a translator or interpreter, and that he did not "understand what is happening because I don't speak English."[3]

"A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." (Cal. Const. art. I, § 14.) "The prerequisite to an appointment of an interpreter is . . . that the person charged with a crime be 'unable to understand English.' " (*In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1453.)

---

[3] In his request for a certificate of probable cause, defendant does not mention an inability to understand the proceedings. That request is written in English and signed by defendant, although it is not clear if defendant himself wrote the request. Defendant's supplemental letter brief, which is not signed by defendant, is written in Spanish. At this court's order, appointed counsel provided the court with a copy of the letter translated into English.

To obtain an interpreter, "an affirmative showing of need is required." (*In re Raymundo B., supra*, 203 Cal.App.3d at p. 1453.)  The defendant bears the "burden of showing he [does] not understand English."  (*Id.* at p. 1456.) An interpreter will be appointed upon a " 'finding of necessity by the trial court.' "  (*Id.* at p. 1453.)  When a defendant complains on appeal that he was denied the right to an interpreter, " ' " 'error is never presumed, but must be affirmatively shown.' " ' "  (*Id.* at p. 1452.)  The defendant bears the burden of showing error, and any uncertainty in the record will be resolved against him.  (*Ibid.*)

Although, a year earlier, defendant had a Spanish-language interpreter at some of his court appearances, a year later, at the probation violation arraignment the court noted an interpreter was no longer needed.  Although the transcript of that hearing is not in the record before us, we presume the trial court knew and followed the law.  (*In re Raymundo B., supra*, 203 Cal.Cal.App.3d at p. 1452 [" ' " 'error is never presumed, but must be affirmatively shown' " ' "]; *People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["Absent evidence to the contrary, we presume that the trial court knew the law and followed it."].)  Additionally, nothing in the record before us shows defendant made a showing that he needed or requested an interpreter at the probation violation hearing.

We also note, in the same letter in which he states that he does not understand English, defendant also details a conversation between him and his attorney, only pointing out one instance where his attorney used Spanish. Moreover, and more importantly, during the probation violation hearing, defendant engaged in a lengthy dialogue with the court.  Speaking in English, the trial court informed defendant of the sentence and any credits he would receive, and asked defendant if that was what he would like to do; the

court advised defendant of the many rights he would be giving up, and asked defendant if he understood he would be waiving those rights; the court asked defendant if he did so "freely and voluntarily without being threatened or given any additional promises"; and the court asked defendant if he admitted the violation. Defendant responded, "Yes," or "Yes, your Honor" to each question. At no point during the dialogue did defendant claim an inability to understand what the trial court was saying or request an interpreter, and at no point in the dialogue did defendant speak in Spanish. On this record, it appears defendant was in fact able to understand English as of the time of the probation violation proceedings, and he was therefore not denied the right to an interpreter.

Defendant makes no challenge to the sentence or any other matters occurring after the plea that do not affect the validity of the plea. We have independently reviewed the record pursuant to *Wende* to determine the existence of any arguable factual or legal issues, and we have found none.

### DISPOSITION

The judgment is affirmed.

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Langhorne Wilson, J.

A174536, People v. Caneitzep

9